Welcome everyone to the 4th Circuit Court of Appeals this morning. We have two interesting cases, and Judge Harris and I are particularly honored to have Judge Alston with us from the Eastern District of Virginia. And then our first case, Bein & Wellness Group versus the Secretary, I guess, of HHS, Mr. Reno. Good to have you with us, sir. Mr. Reno Good morning, and may it please the Court, get our time working here. The government is subject to the position the United States, the Supreme Court, enforced in the Moser case nearly 100 years ago, and reiterated, just for example, more recently in Mendoza. Likewise, nearly 70 years ago, this circuit held that when an agency is acting in a judicial capacity, the agency is bound by traditional rules of collateral estoppel. Traditional rules of mutual collateral estoppel apply to those decisions. This Court's decision in Fairmont aluminum, stating that was, again, cited and approved by the Supreme Court in Utah construction, which adopted the exact same rule. The Medicare statute, in this case, establishes a judicial process where denials of claims for Medicare coverage by the Secretary are litigated against the Secretary before the ALJs who are acting in a judicial capacity. In this case, all the DWG is asking the Court to declare is that the portion of the United States government that constitutes Medicare is not exempt from the traditional rules of mutual collateral estoppel. They weren't firm enough. They weren't deliberative enough to merit issue preclusive effect. Nobody said the government is exempt. So I think there are really two issues, if I may. So there's the first issue of whether or not just generally, traditional mutual collateral estoppel can apply to Medicare cases. Do you understand the district court to have held that it cannot? I think the district court judge, in this case, the magistrate held, was that Congress had delegated to the Secretary the power to determine whether or not mutual collateral estoppel applied. I thought the issue in this case, and just tell me if I'm wrong, I mean, I know there, as you say, there is this presumption that collateral estoppel applies to final agency adjudications. But there's not a presumption that in a five-level review system, preclusive effect will be given at level three. The presumption is not so specific. I thought the issue in this case is at which stage in this process does a decision merit preclusive effect. But you understand the issue to be broader, whether anything that happens in Medicaid review can ever get preclusive effect. Correct. So I think in the first instance, the issue that was disputed by the Secretary was whether just traditional mutual collateral estoppel can apply based on agency determinations. I think the Secretary contended that that couldn't be the case unless the Secretary designated his own decisions precedential. What the Magistrate held with regard to that component was that while nothing in the Medicare statute spoke directly to the issue of traditional mutual collateral estoppel, that Congress had delegated to the Secretary the power to decide whether or not mutual collateral estoppel applied. And then with the Secretary having that power, what the Magistrate held was that the Secretary's own regulations, for example, precluded mutual collateral estoppel. I may have read the decision slightly differently than you did, but it kind of doesn't really matter, I don't think. Putting to one side the district court decision, isn't the question in this case not whether a final agency decision will be treated as preclusive? We presume that that will happen. But which level of agency adjudication in a case like this counts as final for preclusion purposes? I think that is one issue. But I think in the first instance, again, I think the Secretary contends in their briefing to this court that traditional mutual collateral estoppel does not apply in Medicare cases because, for example, the Secretary contends that de novo review of ALJ decisions by the Medicare Appeals Council indicates that Congress intended to advocate mutual collateral estoppel. So at the first level, I think the Secretary does dispute whether traditional mutual collateral estoppel can apply to Medicare cases at all. Likewise, going back a little bit to your point, the Secretary contends that just the sheer existence of the levels of review within Medicare means that you can't have traditional mutual collateral estoppel in Medicare cases. I believe that's the Secretary's position. But I do also think that now when you turn to the elements of mutual collateral estoppel, where they have a prior final decision, I think it's more in line with what your Honor is perceiving. The Secretary contends that decisions by ALJs that are unappealed are not final. That's the Secretary's contention. So, again, as we understand it, there's a first overall just more broad issue of regardless of whether the elements may or may not be met, the Secretary just contends that traditional mutual collateral estoppel does not apply to Medicare cases. I will let you go in one minute. Just one last question about the elements of collateral estoppel. Sort of putting to one side the finality issues, isn't it, as I understand it, sort of the very basic elements of issue preclusion and collateral estoppel are that the same issue have been litigated and decided in the first proceeding? And it looks here as though the issue on which you want preclusive effect, the sort of non-experimental status of these treatments, was neither litigated nor decided in the first proceeding. So how is this, how does, why are we talking about issue preclusion here? Sure. So, with regard to the elements, again, obviously those courts reiterated the elements many times, but we do contend that, in fact, it was the same, the same issues were decided in the cases on which collateral estoppel was based, as in this case. Again, as we say in our papers, the magistrate below actually didn't decide that issue. He avoided that issue. But nevertheless, the Secretary has urged this court to make that determination in the first instance. We've responded to, by citing to, for example, the decisions of the ALJs in the cases in which collateral estoppel was based, and in all Medicare coverage cases, the base issue is whether or not the item is a Medicare covered benefit or service. That's claim preclusion, where, you know, there's like one big question, and then anything that could have been raised and litigated subsidiary to that is going to get preclusive effect. But that's not how issue preclusion works, I don't think. I think for issue preclusion, the actual question that you want preclusive effect on, is this sufficiently non-experimental and generally accepted, has to have been litigated in front of the ALJ and decided by the ALJ. And I don't see in the record where that happened. The question of the MAC decision was you're not applying, you, the ALJ, did not ask that question. So, with regard to claim preclusion, at least I think the claim preclusion and issue preclusion are two different things, of course. With regard to the claims, someone gets a Medicare service, in this case a vein treatment, a claim on behalf of an individual beneficiary is submitted. That's the claim. I want coverage for service on this date. That's what you lay, that's your claim. Within that claim, there are, again, obviously a series of issues. One issue would be, in this case, for example, whether or not the MOCA procedure, just generally, is a Medicare covered benefit. And in the prior three cases, prior three ALJ decisions, the ALJ found that yes, MOCA is a Medicare covered benefit. That's the final decision in those three cases. And in this case, of course, the MAC found the exact opposite. The MAC says MOCA is not a Medicare covered benefit. So just the high level issue, not claim preclusion, issue preclusion, was the issue of whether or not MOCA was a Medicare covered benefit decided in the first cases on which collateral stop was based? Yes, it was. Did the Medicare Appeals Council reach a diametrically opposed conclusion in this case? Yes, they did. So just sheer issue preclusion, those issues are the same. And I know what we say in our papers, and to some degree, I don't know that the Secretary actually disagrees. Before anything can be considered a Medicare covered benefit, there's an exclusion in the statute. It can't be a Medicare covered benefit if it's not medically reasonable necessary. It just can't be. Again, in the decision that we're talking about here, the Medicare Appeals Council contended that the MOCA procedure is not medically reasonable necessary, and then they had a reason why, because they contended it was experimental. And what we say, that issue about whether or not the MOCA procedure is medically reasonable necessary was actually already decided in those first three cases. Here, below, if you look at the record sites, if you look at the record sites, the reason the claims were originally denied was because, again, in this particular case, they contended that the wrong CPT code, the wrong of that LCD precluded coverage, for example. Those two bases, those are the reasons why the claims were initially denied here, and contending that that's why it was not medically reasonable necessary, and therefore, not a Medicare covered benefit. But that exact same issue about whether or not the CPT codes or the LCD bar coverage, those issues were, again, exact issues that were decided by the prior ALJ decisions. And so a little bit of the debate is just that in the prior three ALJ decisions, he addressed the issue about whether or not the coverage could be excluded on the grounds of the wrong CPT code or that an LCD bar coverage, but then he didn't explicitly say, and that means, therefore, that it is medically reasonable necessary and a Medicare covered benefit. But, again, if you look at the record sites here, that is the basis for what's on the denial is. It's not medically reasonable necessary because of the CPT codes. So, again, you have the higher level issue about whether or not it's a MOCAS Medicare covered benefit decided in VWD's favor in the first three cases. Here, the Medicare Appeals Council comes to a completely opposite result. In the first three cases, the issue about whether or not it was medically reasonable necessary also addressed. Here, the Medicare Appeals Council comes to a completely opposite result. So if you just went down the elements, but as we say, below the magistrate did not actually decide that issue yet. So maybe I'll just go on that. So, again, all VWD is asking the court to do is simply apply the traditional principles of mutual collateral estoppel. Again, in that first question about whether or not traditional mutual collateral estoppel can apply to Medicare cases, again, just say that that applies to the Medicare portion of the government. They're not exempt for... Doesn't your analysis provide some degree of tension in the marketplace in that there could potentially be inconsistent determinations and allowing people basically to service provider shop? Doesn't that cause this situation? I don't know about service provider shop, but I do agree with you that, for example, under traditional mutual collateral estoppel, it is possible to come to opposite determinations. So one party could win and, for example, the other side doesn't appeal and, therefore, whatever issues were decided in that first case would be subject to mutual collateral estoppel again. But it's only mutual collateral estoppel, so, therefore, another party might lose that exact same issue. So, again, you could have differing decisions, but in some ways, of course, that's the benefit of just mutual collateral estoppel. So you're suggesting that the difference between what you're trying to accomplish and what would happen in traditional res judicata, which is claim preclusion, doesn't apply here because it's mutual collateral estoppel relating only to the parties that are subject to that particular dispute? Correct. You're exactly right. So, for example, if this court were to declare that mutual collateral estoppel applies to Medicare cases more generally and then, ultimately, it's found that the elements of mutual collateral estoppel were present in the cases here, that decision would only apply, with regard to the MOCA procedure, would only apply to VWG. The Secretary would still be completely free to come to a different determination against a different party with regard to the MOCA procedure. So, again, it's actually narrow. Again, the Supreme Court addressed this in the Mendoza case, saying because there are so many cases the government is involved in, apparently one-third of all federal court litigation in the United States, because of that, they did not broaden it out more generally and they maintained the requirement of mutuality with regard to collateral estoppel involving the government. So, again, it's actually relatively narrow in the sense that you have to have the same party have a first litigation where the same issues are involved and that same party has to come back again and have a second litigation where the same issue is involved. Counsel, I don't quite understand how this process works. So, fill me in. The Secretary didn't actually litigate before the ALJ, right? The Secretary didn't appear and litigate. So, how does that litigation work when only one party is there? Or am I wrong about that? Did the Secretary litigate? Was the Secretary present and litigating this issue in the first set of ALJ proceedings? I'll try this again. As we say, the Secretary is a party to all these cases, but it is true that having been a party, the Secretary, in many of these cases, simply chooses not to participate. Right. Well, I thought one of the key elements of issue preclusion is that the issue had been litigated in the first proceeding and it wasn't litigated. So, again, what we would say is I don't think that's correct in terms of you just look at the cases. The issue about whether or not MOCA is a Medicare covered benefit was litigated in the first three cases. That's the exact issue. By one party? I don't think it has to be litigated by two parties. Well, again, since the VWG bore the burden of proof, proving that that was the case. Yeah, but there was no adversarial litigation. Can you point me to a case where preclusive effect is given to a decision that was reaching kind of like an ex parte kind of proceeding where only one party was there? Well, again, I wouldn't describe this as an ex parte proceeding. I would describe this as an instance where, just like, for example, in a criminal trial where the defendant chooses not, other than pleading not guilty, the defendant chooses not to cross-examine witnesses or present his own. Well, you say the secretary's always a party. Secretary's always a party to the litigations, but the secretary... He can speak or not speak, whatever he wants to do. Right. I think the secretary's own brief admits that the secretary, especially in cases where the party is represented by counsel, as VWG was here, they could show up if they want to or not. But if they don't appear, they're relying on the fact that... They're stuck with it? Well, I was going to say they're relying on the fact that the party that's appealing bears the burden of proof. So, again, just like in a criminal defense case, the defendant is totally silent. It's not that the issues weren't litigated. It's that the government bears the burden of proof. Likewise here, the secretary is their party, but they're choosing to be silent. And then if, as in this case, VWG sustained its burden of proof, the ALJ evaluated the evidence. In each of these cases, VWG presented evidence, actually in the form of witnesses and documentary evidence. The ALJ then weighed it, found that VWG met its burden, and issued a decision that became final. So, again, coming back to you mentioning the phrasing, the secretary is stuck with it. And, again, I actually don't think that's the case. Even under the secretary's own regulations, which we haven't really got into addressing the various burdensome presumptions with regard to common law, even under the secretary's own regulations, whether they participate or not, they have the ability to appeal a decision that's against them. So, for example, in this case, the cases that were directly appealing here, again, as your honor mentioned, the secretary chose not to attend the hearing. They chose to rely on VWG not being able to meet its burden of proof. When the ALJ found for VWG, the secretary used a procedure he calls own motion review to appeal to the Medicare Appeals Council, who then came to the opposite conclusion. So, I think it's a little bit maybe strong to say they're stuck. They would have the right to appeal. But, again, if you just go back and look at the statistics, the secretary wins about 70% of the cases. So, they're just choosing to where they want to, when they want to appear or not. So, again, I don't think it's fair to say that the... They don't have to preserve the issue to appeal it. Correct. They can just be silent, not attend to the hearing, and then now file, again, in this case, a motion for own motion review. If they had chosen to attend, they could have also appealed using a different procedure. So, again, they're not stuck with it. Just, again, my analogy, just like a criminal defendant. The defendant is silent during the trial. Then later they file a notice of appeal saying there was something wrong with the trial. My colleague's reference to preservation just reminded me of a question I had. Did you argue before the MAC that the MAC ought to be treating the first ALJ proceedings as preclusive? No, that wasn't argued. That issue wasn't argued. But what was argued is that, again, the CPT codes, the basis for denial of the CPT codes and the LCDs being the basis before... I'm sorry, before the ALJs. Those issues were argued that they had been addressed before, before the Medicare Appeals Council, if I may. The issue there was, again, after the Secretary lost before his own ALJ, he then filed one of these own motion review procedures. And I assume you thought that the MAC was required to treat the first ALJ proceedings as preclusive. Well, we do think that, but... But did you tell the MAC that? No, not below. What we told the MAC was, again, as we say in our papers, you're actually barred from trying to do that. We said you're precluded from switching the basis under which you contend something would be covered. Because under the Secretary's own regulations, is what we said. Okay. What is it you want us to do? So the main thing that we're... There's a bunch of constitutional issues here you throw them in at the end, too. You haven't mentioned any of that stuff. And the reason I haven't mentioned them is because, at least as I understand it, the Secretary previously contended that the Secretary had the power to abrogate the common law. And again, the magistrate concluded that Congress had delegated that power to the Secretary. In their brief to this court, the Secretary has walked away from that position. So the Secretary changed his position. So what... But your brief, you argue all that, then they changed their position. Correct. So what is it that you think we ought to do now? So what we asked this court to do is find first, overall, that yes, traditional mutual collateral estoppel applies to Medicare cases. And then what we asked for is, because the sum, I'll say, of the elements of mutual collateral estoppel were not addressed by the magistrate, we asked this court to remand. He skipped over some? I'm sorry? He skipped over some elements? Yes, he did. So you say his analysis was incomplete? Right. His analysis... So you want to remand for further assessment? Correct. But you would need us also to say that the magistrate judge was wrong when he said this was not sufficiently final. The reason the magistrate judge didn't have to go on to reach all the elements is because he thought you failed at one of them. So you need us to reverse that, say this is sufficiently final, the magistrate judge is wrong, that other district court is wrong, everybody is looking at this wrong, this is sufficiently final, and then send it back on the other elements? Correct. So with regard to the elements, as we say, the district court in this case addressed three components of them. One, finality, as your Honor is referencing. And, again, that's what we say. Neither the magistrate nor the secretary at the end of his briefing actually conducts the finality analysis required by the Supreme Court in Smith v. Berryhill. ALJ decisions that are not appealed. So unappealed ALJ decisions... The district court addressed that. The district court said... I don't want to keep you up here. Sorry. But the district court said it can be final for purposes of appeal when the question is, is this the agency's last word, but not final for purposes of claim preclusion, which is an entirely different inquiry? Is this the kind of decision that is sufficiently deliberated, sufficiently adversarial, sufficiently final in that sense that we wanted to bind litigants down the road? Different questions. But you want us to just say that was all wrong. It's all the same question. If something is final for appeal, it is necessarily final for claim issue preclusion purposes. Yes. My short answer would be yes. Again, in Smith v. Berryhill, again, you basically have the exact same issue, and that agency there contended that the agency could determine when something was final. Right. And was the issue there issue preclusion? I thought the issue there was, is it final for appeal? No. The issue there was whether it was final so that a federal court litigation could be filed under 405G. Right. So different question. Well, again, we would contend it's not a different question. It's the same question in the sense of what's final. And what the Supreme Court there, again, the test they articulated is whether or not it represents the consummation of the secretary's decision-making in that case and is a decision by which rights are determined or from which legal consequences follow. And, again, what we point to here is, first, neither the district court nor the secretary ever mentioned the Smith v. Berryhill test. They come out, number one. Number two, the secretary's own regulation states that unappealed decisions by ALJs are binding. They use the phrase binding. So, again, you'd have to conclude, right, and there's no ability to go further if you don't appeal after 60 days. So that would appear to be final and a decision from which rights or obligations have been determined and legal consequences follow. The magistrate and the secretary contend that the secretary can decide what is final and that only decisions the secretary designates as precedential are final. But, again, as we say, precedential is different than final. So, again, if I may, just coming back to, again, I want to go back to your question, Judge King. The main thing we are hoping the court will do is to make a determination that Medicare cases are subject to traditional principles of mutual collateral estoppel. Subject to traditional principles of mutual collateral estoppel. That red light's on. In fact, that's what you're looking for. Go ahead, but I want you to finish. I want to know what you want. Okay, so just determine that traditional principles of mutual collateral estoppel apply to Medicare cases in the first instance. Again, we pointed to three things that the magistrate said with regard to the elements. We say that they're all incorrect for the reasons set forth in our brief and remand to the district court for a consideration of the remaining elements that the district court did not address. Thank you, Your Honor. Okay, thank you so much. Ms. Stapleton, good to have you with us. Good morning, Your Honor. Thank you, Sarah. Thank you. I saw his red light, though. Yeah. Thank you for coming to my rescue. Okay, thank you. Okay, may it please the court, Anna Stapleton on behalf of the government. So the core issue in this case is whether principles of estoppel attach to an ALJ's decision on a Medicare reimbursement claim. I wanted to begin this morning by focusing on the ways in which plaintiffs' approach would hurt beneficiaries and providers and suppliers, as well as the secretary, in ways that are simply contrary to the statute's design. And, of course, the touchstone of the inquiry here is whether Congress intended principles of estoppel to apply. Just so I understand your position, your colleague says you think collateral estoppel just doesn't apply in the Medicaid area at all. I mean, is it your position that a decision by the Medicare Appeals Council, by the MAC, does not get preclusive effect? So that's actually an open question, Your Honor, and respectfully, it's just not presented in this case. The only issue this court would need to decide is whether estoppel attaches to the ALJ decision. I do understand that, but I'm trying to figure out what the government's position is and whether your colleague is right, that at the end of the day, you think none of this gets... The problem here is not just that this is an ALJ decision. It's that even MAC decisions, like even if the secretary had lost this appeal, the MAC says, no, these treatments satisfy all the requirements for coverage. They're not experimental. They're generally accepted. And so VWG continues offering the service. The secretary could still go back in in the next case and say, no, we're not following the MAC. We think these are too experimental. So again, whether estoppel applies is open. I would say that decisions of the Appeals Council are to be followed by lower-level decision makers. And certainly if the Appeals Council were ever to differ from a prior decision, it would have to explain its variation. But again, the key issue here is whether estoppel attaches at the ALJ level. And again, there's no indication from the statute that that's the intent, and in fact, the way that the statute operates attaching estoppel would have very negative consequences for beneficiaries. For example, I think as was briefly mentioned this morning, beneficiaries are not required to have counsel. They're not required to be represented by legal counsel before the ALJ. That's significant because these are relatively informal adjudications, and they're relatively low-stakes proceedings. If a beneficiary comes to an ALJ having had a claim denied, seeks an appeal, and loses that appeal, let's say the beneficiary is receiving a treatment on a monthly basis. They come back to the ALJ with next month's claim. There's no estoppel on any issues that were litigated in the first claim. So if this unrepresented beneficiary simply made a mistake in litigating their first claim before the ALJ, they get a fresh shot at the second. And again, the fact that Congress didn't require beneficiaries to be represented by counsel at that stage is indicative that that was the intent. I think Judge Harris, as you were alluding to earlier this morning, this is a claim-by-claim adjudication. The ALJ level is not the final step in the proceedings, and if a beneficiary chooses to walk away after the ALJ rejects a claim, there are no down-the-road consequences of that for that beneficiary. Judge Alston, you mentioned, of course, impacts on providers and suppliers, and there is a problem here because the statute permits providers and suppliers to have claims assigned to them from beneficiaries. And so if a provider comes to the ALJ and loses a first claim, again, under current practice, that means they've only lost the first claim. They can walk away. But if a provider is going to have hundreds, even thousands of claims on behalf of a large number of beneficiaries, that means, under plaintiff's view, if a stoppel attaches, losing that first claim now means that they are potentially precluded from litigating those issues down the line. They're now under tremendous pressure to take that first claim to the Appeals Council, whereas otherwise they would not necessarily have had to. They're going to litigate to the hilt because all of a sudden this one claim has implications for many claims down the line. Of course, the other problem is that different providers could end up with different outcomes. Suppose there's a relatively new treatment on the market. Maybe there are two main providers of that treatment. One wins the first time out of the ALJ. One loses the first time out of the ALJ. Now there's preclusion on the one hand against the Secretary and the one hand against the losing provider. And all of a sudden, that one ALJ decision has just taken way outsized importance across a very large number of claims. Can I ask you a question? As I read the District Court opinion and then I guess the Christensen case, which it effectively incorporates, what these courts are saying is basically that they're agreeing with you in saying that an agency decision at the ALJ level is not sufficiently final for collateral estoppel purposes. It might be final for purposes of appeal, but this is different and it's just not firm and adequately deliberative enough to give a preclusive effect. But I don't actually understand your brief to be defending that argument. So, Your Honor, I think it's a bit of a complicated question. So, on the one hand, Illinois Council tells us, the Supreme Court tells us that only the Appeals Council decision is the final decision. It represents the culmination of the full administrative review process. I think this Court said in Almy that it bears the full imprimatur of the agency's decision making. On the other hand, of course, an ALJ decision is final with respect to that claim. The Smith v. Berryhill issue, I think, is slightly separate. What happens in Smith v. Berryhill is that the Social Security beneficiary tried to bring a claim to the Appeals Council. It was denied, I think, because it was untimely. But, basically, the Appeals Council didn't do any substantive review. And then the question before the Supreme Court was, is the dismissal of the claim without substantive review sufficient? So, I don't think Smith really gets us there. Nevertheless, I would agree it's kind of a hard question as to finality. So, you are not defending the District Court's decision? I would say, Your Honor, that this Court doesn't need to rely on that point. What do you want us to do instead? I'm so confused as to how the party's arguments in this case sort of intersect with the actual decision we're reviewing. It seems like both of you think it's wrong. Your Honor, I wouldn't say that it's wrong. So, what I would say is that... You're not defending it. You're abandoning it then. I don't intend to abandon it, Your Honor. I would say what the District Court did was to look to Christensen. Christensen, fundamentally, is applying the Supreme Court's decision in Astoria that says, we look to the indent of Congress. That intent can be implied from the features of the statute. And I think there are a variety of features of the Medicare statute that would allow this Court to apply. I thought the question in Astoria... Tell me if I'm wrong. This is complicated. I thought the question in Astoria, the presumption, that goes to whether a final agency adjudication that otherwise sort of satisfies the traditional elements of collateral estoppel should be given collateral estoppel. Whether it matters that it's an agency decision and not a court decision. Congress legislates with the understanding that a decision that would get preclusive effect if it were issued by a court will also get preclusive effect if it were issued by an agency. But is there something in Astoria that points me to which level of agency adjudication is going to get preclusive effect? Not quite, Your Honor. What I would say is that Astoria describes, and it's sort of a long series of passages between 108 and 110, describes the question of estoppel in the administrative context generally. So yes, Astoria's decision was about whether the final decision of a state administrative body would have preclusive effect in district court, I believe under the Age Act review, and the answer was no, it would not, because Congress clearly would take sort of less deferential review. But in getting to that conclusion, what the court is talking about is looking to the statute to determine whether Congress was intending to sort of write in principles of estoppel into an administrative scheme. And I think here we can sort of take that review standard and say, looking at the Medicare scheme, there's no indication that Congress intended estoppel to attach, certainly not to attach to the ALJ level decision. As I I think maybe your argument is perhaps complicated because you want to keep this question open about whether anything that this agency does will ever get preclusive effect at any level. But I thought the rationale behind Astoria is that we understand Congress legislates against a background assumption that final agency actions will get preclusive effect, and then we look for something that rebuts that presumption. But I just don't understand, Congress doesn't legislate against an assumption that level three of agency proceedings will get preclusive effect. In fact, as to that question, I would imagine Congress is legislating against a different background norm, which is that when it comes to their own internal review proceedings, agencies have a lot of discretion in how they structure them and in what they deem final. So I just, I don't understand how Astoria is sort of directly relevant to the question in front of us, which is not do, as you say, is not do these agency proceedings at any level get preclusive effect, but just how exactly is this process structured, and which if any, are sufficiently final for preclusive effect? Do you see what I'm saying? I do see what you're saying, Your Honor. If it's helpful, I think Astoria is maybe closer than you're viewing it, only because it is talking about a weak presumption in the context of administrative schemes, and it is saying when we're talking about administrative schemes, unlike when we're talking about abrogation perhaps of other common law principles, when we're talking about administrative schemes, we really are being deferential to Congress's intent in creating that scheme. And so I think that remains true if you're talking about the application of estoppel principles at a particular level, or to the scheme overall. But I think Your Honor is absolutely right. Congress did grant the Secretary discretion to, of course, promulgate rules enacting the scheme that Congress created. I will say the fact of ALJ review, the fact of the Appeals Council, those are congressional and created levels of review. But then there is discretion to the Secretary to carry that out. One of the ways in which that matters is that there is no statutory requirement that the Secretary participate at the ALJ stage. And again, going back to the practical consequences here, were that ALJ decision to have preclusive effect? But ALJ works for him. That's true, Your Honor. He's in it. As in many administrative schemes, there is of course a separation between the agency adjudicator and the agency as a party. We have these cases come in here all the time. Immigration cases in particular. They come from immigration judges, but the lawsuits are against Attorney General Garland. That's right, Your Honor. It's the same thing. It's the Justice Department. This is the Secretary of DHS, whatever it's called. The Secretary of DHS, yes. So again, the administrative scheme is that there is an adjudicator and then separately there can or cannot be someone there representing the Secretary's position. Is the point that the Secretary is too busy or the agency is too big to be bound by these things? No, Your Honor. Too complicated? There's too much litigation? We have a lot of litigation too. We resolve it. Certainly we do, Your Honor, and of course the agency resolves it as well, but the question is Congress left the Secretary discretion to participate. I will say, when the Secretary does not participate before the ALJ, there are consequences. So under the long-standing regulations, if the Secretary did not participate as a party, his ability to seek reviews But the ALJ, or whatever it's called, works for the Secretary. Yes, Your Honor, but in a very different capacity. Pardon? Pardon me, Your Honor. We're trying to separate and say that the ALJ is really different. It works for the, it's part of the Department. The ALJ is tasked with applying the law. And they're supposed to be fair and all that stuff. Well, everybody is. Of course, Your Honor. In any event, when the Secretary does not participate before the ALJ, review by the Appeals Council is circumscribed. So the CMS, which is the administrative body that adjudicates or, excuse me, advocates on behalf of the Secretary can refer a case for own motion review only if there is a material error of law or if there is a major policy question at issue. Right? So in a world where preclusive effect could attach to the ALJ decision, not every error or mistake that an ALJ might make would rise to that level. And so the Secretary would be under quite a bit of pressure to participate in the ALJ hearing and also to appeal any mistaken issue to the Appeals Council, particularly in the case where a provider may have maybe bringing a large number of the same claims or similar claims down the road. I did just want to take a moment and touch on the issues of whether the elements of a stop law are met here because the main one is this issue, sorry, the question of whether the identical issue was litigated. How many elements are there? Do you agree on that? By my count, it's five. I think there are five. So I think the key one here is identity of the issue and of course there's a discussion about whether in concluding that Medicare should cover the MOCA procedure in the first set of claims, the ALJ necessarily decided that the procedure, the service was reasonable and necessary in accordance with the Medicare statute. And the answer is no. That issue was simply not decided. I think it's helpful for this purpose to look at the claims that are on direct review here because what happened is the ALJ in this set of claims on direct review made a very similar decision. Said, oh actually I think you did use the correct CPT code and so I'm going to grant coverage. Sort of end of discussion. And CMS went to the appeals council seeking on motion review saying actually there is a material legal error because the ALJ failed to address whether it was reasonable or necessary. The ALJ was supposed to apply Who CMS worked for? CMS is also part of the agency, Your Honor. That's what I thought. And so if the legal error is a failure to consider an issue, it's very difficult to understand how in the first set of cases we would think that the Is it your understanding that for issue preclusion it is sufficient that an issue is sort of subsidiary to the final decision so that we can just assume I guess it was litigated and decided? No, Your Honor. The test is whether it was actually resolved, right? Actually litigated to finality and necessary to the judgment. And in that first ALJ set of decisions, there's simply no discussion of whether all of the elements of the reasonable and necessary standard were met. I'm pretty sure our law on this is clear in our circuit that the burden is on the proponent of collateral estoppel to be able to basically point to the page to make the record. That's right, Your Honor. The Court has no further questions. I'm happy to rest on our brief and we would ask the Court to affirm. What do you want us to do? Affirm. I would ask the Court to affirm. Thank you, Judge. Call support. Yes. Mr. Pistorubino, good to have you. Thank you, Your Honor. You have some time reserved. Perfect, thank you so much. I thought maybe I might try to go a little bit backwards from what we just heard as much as I can. Maybe I'll start with a more higher level point. Judge Harris, you had some questions about the sets of framework. Again, there is a presumption that the traditional principles of common law apply to agencies when they're acting in a judicial capacity. What the Supreme Court has said time and time again in order to overcome the presumption of the common law, the party contending that the common law has been abrogated has to point to statutes passed by Congress that quote, speak directly to the issue for example, or quote, use clear statutory language. So in Astoria, the Supreme Court reiterated, yes, we start with the presumption that the common law of collateral estoppel applies to this, in that case, a state court action and now we're going to look to the statute to see is there something that Congress said that evidenced Congress' intent to abrogate the common law in that case. Can I ask you, so I continue to think Astoria is much more about the question of whether any level of agency review is going to get preclusive effect, but even assuming there's some presumption in Astoria that level three ALJ review would be treated as preclusive, what about the part, I think this is right, that the statute itself says that ALJ decisions are reviewed de novo by the MAC, isn't that a pretty clear indication that Congress didn't actually understand that these ALJ decisions, I mean, if they're not, if they don't get any deference within the agency itself, why would we think Congress thought they would be preclusive in federal court? So again, let me just come back for a moment to Astoria, if I can. What they say in Astoria and Utah construction is that when an agency is acting in a judicial capacity, when an agency is acting in a judicial capacity, traditional principles of mutual collateral estoppel apply. They make no effort, the Supreme Court has never made an effort to say, is it level three or is it level four? It's just, is the agency acting in a judicial capacity? And so here at the ALJ level, the J, right, is judge. I think because the Secretary has never addressed it, never responded to it, the Secretary has conceded that ALJs are acting in a judicial capacity waiting to make their determinations. So just applying again the standards set forth in Utah. Okay, but then I'm saying, I'm giving you the, I'm sorry, I probably was not clear, the premise of my question is I'm giving you all of that. There's a presumption. And my question is, why is it not rebutted by the part of the statute that says these ALJ decisions, adjudicatory or not, get absolutely no deference on review? Why isn't that a sign that Congress did not think that these would be precedential decisions that if they get no deference at all within the agency's own review system, isn't it odd to think Congress thought that they would be preclusive in federal court? So, again, if I may just make sure we got our burdens correct. Again, it's the Secretary's burden to try to point to something in the statute that evidences Congress's intent to abrogate the common law. With regard to de novo review, it is de novo review of this direct decision being appealed from. Right? Whereas collateral stoppel is, there's a prior decision, right? There's a prior decision involving the same parties and the same issues that has effect in the current case. So, just like this court reviews. I do understand the difference. I feel like I'm definitely not asking my question, right? If Congress, I don't mean, I don't want to say this in any kind of normative way, but Congress, if Congress thought these ALJ decisions were so deliberative, adversarial, they kind of merited preclusive effect in federal court, why would it at the same time say, but when they get up to the MAC, the MAC should just ignore them. They don't get any deference at all. Those two things seem somewhat inconsistent to me. Do you see what I'm saying? Yeah, I do. Because it's sort of not telling me that there's a difference between direct review and collateral review doesn't really seem to go to the tension I'm trying to highlight, but I do worry that I'm saying it wrong. Right, so I think maybe the issue is, again, the de novo decision that is subject to review, right? Whereas, again, in collateral stop, well, there's another prior case. There's another prior case that has already been finally determined. Right, but Congress thought that prior case also would get no deference had it gone up on agency review. Correct, and so, again, if I may help, I'm trying to help here, what Your Honor is referencing, again, I think is exactly the thing that was cited by the Supreme Court, or discussed by the Supreme Court in B&B Hardware. Again, just in there, the cases, the prior case would have been subject to de novo review had the party appealed it, right? So, here, in the first cases, it's true, had the Secretary appealed the decisions against him, had he not acquiesced to their correctness, they would have been subject to de novo review. But the Secretary didn't do that. Their final, again, just as the Supreme Court said in B&B, now they can be the basis for mutual, the basis for mutual collateral estoppel. In the current case, it's true. The ALJ's decision would be subject to de novo review. But, again, so it's the same, the MAC is sitting in the same posture as this Court is when it reviews district court decisions applying collateral estoppel. You don't just say, well, there's no collateral estoppel at all because we applied de novo review. You're looking at the current case that's being decided and say, did that court properly apply, for example, collateral estoppel? So, again, de novo review is consistent with collateral estoppel. I know in our papers we cited two or three other statutes with similar de novo review provisions that are all held to be subject to mutual collateral estoppel. So, again, I just want to make sure we're clear on the story. Let me ask you this. You would agree that the ultimate power over this whole scheme lies with the Secretary. Do you agree with that? Because the Secretary is the one who sets the regulatory schemes from a policy standpoint. So, no, I would disagree with that, respectfully. Let me take the question another way. What if there was a dispute between the Secretary's determination as to how the regulatory scheme should work and you had what the Secretary viewed as a rogue ALJ who's doing things entirely inconsistent with the policy considerations of the Secretary? Who would win? So, let me just start back at a high level if I can. So, with regard to how the whole system works, I'll say Congress has legislated how the whole system works. That's what the statute sets forth. And delegated the responsibility for making it work to the Secretary. Subject to the Congressional statutes, that's true. But, again, the presumption is that Congress legislated with the expectation that the common law will apply. So, I don't think it's correct to say that the Secretary, through regulation, can abrogate the common law. The Secretary doesn't have that power. With regard to your example of the rogue ALJ, with regard to the Secretary's regulations, again, that would be potentially a different issue and that, in that instance, the Medicare Appeals Council, for example, could correct the ALJ. But, of course, the Secretary would have to appeal a negative ALJ decision. So, if the Secretary doesn't and acquiesces to the correctness of that prior ALJ decision, again, they shouldn't get multiple bites at the apple. They've acquiesced. They may be bound by collateral estoppel now. So, again, I'm flying over my time. If I may, I just wanted, if I could, just try to address some of those points that I heard. At the outset, I heard a lot of policy arguments, I try it that way, about whether this should be good or bad, and I know our base position is that's something for Congress to decide. The policy issue is something that only Congress can decide. The Secretary does not have the power to abrogate the common law. Congress has legislated with that presumption. Number one, again, I know we said, I don't think it's ever been contested, so I actually believe it's been conceded. ALJs are acting in judicial capacity. And when they issue decisions, again, and they are not appealed, those decisions become final. I heard a little bit about that, maybe Astoria talks about a weak presumption of the common law. Weak presumption is a phrase that has never been used by the Supreme Court in any case. There's just the presumption of common law. In fact, it's the opposite. For example, as this court said in Crescent City and in Texas, statutes which are alleged to abrogate or invade or derogate the common law are strictly construed in favor of retaining the common law. So again, just in our view, a failure to address these things. With regard to your point, Judge Harris, about the burden of establishing, for example, that the elements are the same. In that instance, again, I know in our briefs, we cited two polar opposite conclusions about whether or not MOCA is a Medicare covered benefit or not. The ALJs in the first three cases all issued decisions saying MOCA is a Medicare covered benefit, and in this case, the MAC issued a polar opposite conclusion. MOCA is not a Medicare covered benefit. And again, when you get into it about the medically reasonable necessary, that is a reason why something might not be a Medicare covered benefit. Again, if you get into the first decisions, as we say, in fact, the ALJs in those cases did address it. Coming to, again, your question, Judge Harris, the decisions of the ALJs in the first case, they simply could not have concluded that MOCA is a Medicare covered benefit unless they had necessarily concluded that MOCA is medically reasonable and necessary. Again, they have to make that conclusion to get there. So I think from the elements of collateral stoppable, yes, if something is a necessary component of reaching your conclusion, yes, it is actually litigated. And actually litigated, again, I know the cases say, it doesn't matter whether the other side shows up or not, or how much they talk about it or not talk about it. As long as the issue is presented to the ALJ, again, a higher level, is MOCA a Medicare covered benefit? ALJ presented that, I'm sorry, VWG presented that, and the ALJ made that determination. I've been very generous with you on your time. I appreciate it. I know you came a long way to get here. We appreciate your work and that of the Secretary, and we'll take a matter under advisement, and we'll come down in great counsel, as is our custom, and we'll proceed to the next case. Thank you. Thank you. Marsha? Marsha? Thank you. Our next case is Wilson Yachts.
judges: Robert B. King, Pamela A. Harris, Rossie David Alston Jr.